287 Md. 101 (1980)
411 A.2d 97
MONTGOMERY COUNTY BOARD OF REALTORS, INC. ET AL.
v.
MONTGOMERY COUNTY, MARYLAND
[No. 85, September Term, 1979.]
Court of Appeals of Maryland.
Decided February 11, 1980.
Motion for reconsideration filed March 12, 1980.
Denied March 21, 1980.
*102 The cause was argued before MURPHY, C.J., and SMITH, DIGGES, ELDRIDGE, ORTH,[*] COLE and DAVIDSON, JJ.
James M. Griffin, with whom were B. George Ballman, Patrick Casey Duncan and Staley, Prescott & Ballman, P.A. on the brief, for appellants.
Charles S. Rand, Assistant County Attorney, with whom were Paul A. McGuckian, County Attorney, and Robert G. Tobin, Jr., Deputy County Attorney, on the brief, for appellee.
SMITH, J., delivered the opinion of the Court.
Apparently piqued at what it regarded as inadequate real property assessments, Montgomery County enacted a tax statute intended, as put in its brief, to be applicable to a seller who "is revealed to have derived real income from his property in that he enjoyed the use of the property at a lesser tax burden than the sale reveals he should have borne" and to thus impose "an excise on that income, taken, not retroactively, but at the time he is both revealed to have enjoyed the income and at the time he realizes it." It was characterized by the trial judge as "an excise ... on `windfall' profits." We shall hold that the County exceeded its authority.
*103 In 1977 the Montgomery County Council enacted a statute it titled "Real Property Tax Recapture." It imposes "upon the occasion of the transfer of real property located in Montgomery County a tax on the amount by which the taxable value of such property on the date of recognition exceeds the assessed valuation of that property." The tax is calculated "by multiplying the amount so determined by .037 ($3.70 per hundred dollars)." Subject to the provisions of a succeeding paragraph relative to situations where boundary lines may have changed, the term "assessed valuation" is defined as "the actual assessed valuation of such property on which annual property taxes are payable as determined on the date of finality immediately preceding the date of recognition." The act provides, "Taxable value of real property on the date of recognition shall be determined by multiplying by 0.45 the consideration received for the transfer of such property and subtracting eight thousand dollars ($8,000) from the resulting product." Provision is then made that if subsequent to the date of finality "immediately preceding the date of recognition, betterments have been made to real property subject to the tax ..., the cost of such betterments incurred by the person transferring the property may be deducted from the consideration received for the transfer of that property prior to calculating the taxable value of such real property on the date of recognition." The term "betterments" is said to "mean all physical changes to the property which tend to increase the value thereof." The date of finality is defined as "January 1, the date as of which assessments of real property become final for the taxable year next following," while "date of recognition" is said to "mean the date on which the transfer of real property takes place." The term "transfer" includes a conveyance in fee simple or the transfer of a partial interest in real property.
A number of exemptions are provided in the tax statute. These include that there shall be no tax applicable "to the initial transfer of property on which there is new construction or on which major betterments have been constructed subsequent to the date of finality immediately preceding the date of recognition," transfers by certain nonprofit *104 organizations, and other exemptions not relevant to our discussion here.[1]
The act further provided that the transferor of property subject to the tax was "solely liable for the payment of the tax"; that it should "be paid at the time of or prior to the presentation of any instrument to the County Supervisor of Assessments for transfer ... on the assessment records of the County"; and that in the case of a transfer of an interest in real property "which is not required by law or ordinance to be transferred on the assessment records of the County, the tax shall be paid before any instrument conveying such interest shall be presented to the Clerk of the Circuit Court for recordation."[2] Further provision was made for appraisal by the Director of Finance if he had reason to believe that the consideration had been incorrectly stated.
Appellants John C. Walker Realty Corp. and Edward W. Schultz had sold property said to be subject to the tax. Montgomery County Board of Realtors, Inc., owns real property in Montgomery County. Also, in the bill of complaint brought by it, Walker and Schultz, it is said that it "represents over 3,500 real estate brokers and sales persons in Montgomery County...." The three filed a suit praying that the statute in question might "be declared illegal, unconstitutional and void" and that the County might be directed to refund the monies previously paid by the plaintiffs.
*105 The contentions of the parties were summed up by the chancellor:
Plaintiffs in asking the Court to declare Section 52-16C unconstitutional claim:
1. That the law imposes an additional property tax at the time of transfer of certain properties and that it is therefore a property tax and as such violates the uniformity provision of Article 15 of the Maryland Declaration of Rights.
2. That the Act is in violation of State law regulating real property assessments.
3. That alternatively, if the Act is deemed to impose a transfer tax it is invalid because there are specific provisions elsewhere in the Montgomery County Code governing imposition of transfer taxes, which provisions were not here complied with.
4. That alternatively, if the Act is held to impose neither a property tax nor a transfer tax, the tax imposed would amount to an illegal and arbitrary excise tax.
The defendant, Montgomery County, contends that the Act imposes an excise tax (other than a transfer tax) and that said tax is not arbitrary under constitutional standards.
He concluded:
In brief, we find the tax imposed is an excise. We agree with defendant that it imposes a tax on "windfall" profits. As such, we think it meets the expanded definition of an excise as discussed in Weaver v. Prince George's County, 281 Md. 349, where the Court at page 357 said:
"More recently, courts have employed a more expanded definition. In Continental Motors Corp. v. Township of Muskegon, 376 Mich. 170, 135 N.W.2d 908, 911 (1965), an excise was defined as `a tax imposed upon the performance *106 of an act, the engaging in an occupation, or the enjoyment of a privilege.' Accord, Village of Lombard v. Illinois Bell Telephone Co., 405 Ill. 209, 90 N.E.2d 105, 108 (1950); Callaway v. City of Overland Park, 211 Kan. 646, 508 P.2d 902, 907 (1973). Indeed, an excise is said to embrace every form of taxation that is not a burden directly imposed on persons or property. Gila Meat Co. v. State, 35 Ariz. 194, 276 P. 1, 2 (1929); City of Glendale v. Trondsen, 48 Cal.2d 93, 308 P.2d 1, 7 (1957)."
Thus, he declared the tax in question "to be a constitutionally valid and enforcible Act of the County Council for Montgomery County ..., enacted pursuant to its legislative powers." The appellants entered an appeal to the Court of Special Appeals. We granted a writ of certiorari prior to hearing in that court.
Montgomery County is a "charter" county, the first county in the State (as distinguished from Baltimore City) to invoke the provisions of Maryland Constitution Art. XI-A relative to home rule. Art. XI-A, § 2 provides that the General Assembly "shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter" and that such powers "shall not be enlarged or extended by any charter formed under the provisions of th[at] Article, but such powers may be extended, modified, amended or repealed by the General Assembly." By Art. XI-A, § 3 the County Council of Montgomery County has "full power to enact local laws of said ... County including the power to repeal or amend local laws of said ... County enacted by the General Assembly, upon all matters covered by the express powers granted," with certain limitations not here applicable, except for the provision "that in case of any conflict between said local law and any Public General Law ... the Public General Law shall control."
Maryland Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.) Art. 25A, § 5 (O), a part of the Express Powers Act, grants all home rule counties the power to levy a property tax. It *107 appears to grant no general taxing power. See Mont. Co. v. Md. Soft Drink Ass'n, 281 Md. 116, 129-30, 377 A.2d 486 (1977). The County claims its power to enact this taxing statute is derived from Chapter 808 of the Acts of 1963 which authorizes the County Council for Montgomery County "to have and exercise, within the limits of the county, in addition to any and all taxing powers [t]heretofore granted by the General Assembly, the power to tax to the same extent as the state has or could exercise said power within the limits of the county as a part of its general taxing power," with certain limitations, one of which we shall hereafter mention relative to income taxes.
The tax with which we are here involved has earmarks of a property tax but does not completely coincide with the definitions of a property tax set forth by Judge Levine for the Court in Weaver v. Prince George's County, 281 Md. 349, 357, 379 A.2d 399 (1977). Admittedly it is difficult to draw a distinction between a property tax and an excise tax. Id. 353-65. In the view which we take of this case, however, we do not believe it is necessary to catalog this tax as a particular type of tax. This is because Constitution Article XI-A, § 3 provides, "that in case of any conflict between said local law and any Public General Law ... the Public General Law shall control." We point out, however, that if this tax could properly be held to be one upon "`windfall' profits," as held by the chancellor and at least suggested by the County, then it would be ineffective since Chapter 808 of the Acts of 1963 in granting powers to Montgomery County stated specifically "that the Council shall not have the power to impose any tax ... upon the subject matter of ... Code ... [(1957)] ... Sections 279 to 323 of Article 81 (Tax on Incomes)...."
Code (1957, 1975 Repl. Vol.) Art. 81 provides a detailed scheme for the assessment and levy of taxes. Under § 13 (a) "[e]xcept as in th[at] section otherwise provided, all property, real or personal, subject to ordinary taxation under th[at] article, [is to] be valued and assessed for purposes of State and county ... taxation by the supervisors of assessment of the county ... in which the same shall be subject to taxation [under Art. 81]." This includes real property. The method of *108 assessments is set forth in § 14 and elaborated upon in § 19 which states in greater detail the methods for assessing real estate. Section 29 provides for notice as to assessments and § 29A sets forth the date of finality. The tax levy for each year is to be made as of the date of finality "or semiannual date of finality provided for in § 2 (20) of [Art. 81]." Section 31 (b). This levy is to be before the beginning of the tax year. Section 32. In Baltimore C. & A. Ry. v. Wicomico County, 93 Md. 113, 48 A. 853 (1901), the Court held invalid an attempt to levy retroactively for each of three prior years on the ground the county had been given only annual taxing power. Provision is made in § 34, however, for taxation of "escaped" property. Judge Eldridge said for the Court in Grosvenor v. Supervisor of Assess., 271 Md. 232, 315 A.2d 758 (1974):
Where an assessment has actually been made and taxes paid on property, such property has not "escaped" assessment and taxation. It simply is not escaped or omitted property under the language of typical "escaped property" statutes. The language of these statutes reveals that they were not intended to authorize a retroactive increase in the assessment and taxation for prior years because of an asserted mistake in valuation, or some other alleged mistake. On the other hand, where property has not been assessed and taxed at all for the years in question, the courts have regularly held that escaped property statutes apply, regardless of whether the property was known or not. [Id. at 241 (emphasis in original).]
Sections 38 and 39 provide for review by supervisors of assessment of the respective counties "effective for the succeeding levy" for the purpose of correcting any errors in value or otherwise that may have been made.
Art. 81, § 233 establishes the method for appointment of supervisors of assessment in each county. Section 234 says that they shall "have general supervision over the assessment of all property in the county ... for which they are appointed. They shall use all due diligence in listing escaped and new property and shall cooperate with appropriate county ... *109 officials or other assessing authorities in obtaining fair and equitable assessments, and have power to appeal to the Maryland Tax Court from any assessments or rulings which the supervisors consider improper when made by the property tax assessment appeal board in the counties...." It further states, "They shall visit each district of the county ... for which they are appointed at frequent intervals, obtaining all necessary data and information as to the valuation and existence of property subject to taxation, keep posted on sales in the county, with conditions attending these sales, and report the sales and the consideration involved to the State Department of Assessments and Taxation." Then § 234A goes on to provide that if any assessment is adjusted by a property tax assessment appeal board, the Maryland Tax Court, or any court, then "the assessor, in making the assessment for the succeeding taxable year, shall give due consideration to the reasons for the valuation determined by the adjusted assessment." The State Department of Assessments and Taxation is required by § 244 from time to time to "formulate a uniform plan for the assessment of property, which shall be followed strictly by the property tax assessment appeal boards and by all assessors, for all subsequent reassessments and reviewals of assessments authorized by th[at] article." All supervisors are State employees. Section 246B (a).
Provision is made in §§ 255 and 256 for hearings before the supervisor of assessments and the Maryland Tax Court of those who feel aggrieved by any assessment. This specifically includes a county. County Exec. v. Supervisor, 275 Md. 392, 340 A.2d 246 (1975), and County Council v. Supervisor, 274 Md. 116, 332 A.2d 897 (1975). Thus, Montgomery County is not without remedies in any situation in which it believes the supervisor of assessments has undervalued any given property for tax purposes. We add that Montgomery County has not hesitated in the past to pursue such a remedy even as far as this Court.
This attempt by Montgomery County to reassess and tax real property after the date of finality is in direct conflict with the provision of Art. 81 relative to the date of finality and the process to be followed where an erroneous assessment is *110 made. Despite the wording of the statute, its effect is to move forward the date of finality as to sales made after that date. On the basis of an actual sale subsequent to the date of finality the County seeks to second guess the State's expert appraisers in the office of the Montgomery County Supervisor of Assessments and thus to make a retroactive reassessment. As a matter of fact, a sale during the year at a price in excess of the value placed on the property at the time of assessment does not necessarily indicate erroneous valuation. First of all, we have commented on several occasions that valuation of land is not an exact science and that experts will often differ as to their opinion of fair market value. See, e.g., Supervisor v. Southgate Harbor, 279 Md. 586, 592, 369 A.2d 1053 (1977); Fairchild Hiller v. Supervisor, 267 Md. 519, 521, 298 A.2d 148 (1973); and Weil v. Supervisor of Assess., 266 Md. 238, 254, 292 A.2d 68 (1972). Secondly, although assessments are as of the date of finality, the valuation upon which the assessment is based is necessarily made some time in advance of that date. A number of factors could occur even between the date of finality and the date of ultimate sale which would alter property values. An example of a reverse change in such values is the current report in the public press that real estate values have dropped substantially in recent months as a result of high mortgage interest rates.
Because the scheme of taxation here is in direct conflict with Art. 81, the County Council was without power to enact it. There is yet another reason why the County was without power to enact this tax. That is that a county may not enter into a field which the State has occupied and preempted as here. McCarthy v. Bd. of Education of A.A. Co., 280 Md. 634, 374 A.2d 1135 (1977), and County Council v. Montgomery Ass'n, 274 Md. 52, 333 A.2d 596 (1975).
Judgment reversed; appellee to pay the costs.
NOTES
[*] Reporter's Note: Orth, J., participated in the hearing of the case and in the conference in regard to its decision but retired prior to the adoption of the opinion by the Court.
[1] The act states that the tax "shall not apply to transfers of land assessed as agricultural land, under Section 52-21 (d) of the Montgomery County Code 1972, as amended; nor to transfers of land classified as rezoned if said transfers are taxed under Section 52-21 (e) of the Montgomery County Code 1972, as amended...." Sections 52-21 (d) and 52-21 (e) of the Montgomery County Code impose a transfer tax on land previously zoned as agricultural and land which has been rezoned to a more intensive use at the instance of the transferor or transferee. That transfer tax was specifically authorized by Chapter 633 of the Acts of 1968. Its application was before the Court in Rapley v. Montgomery County, 261 Md. 98, 274 A.2d 124 (1971), although in the posture of the case we were unable to reach the issue sought to be raised by the appellant.
[2] Since July 1, 1973, all supervisors of assessments have been employees of the State of Maryland. Code (1957, 1975 Repl. Vol.) Art. 81, § 246B (a). We are not to be understood here as in any way expressing an opinion as to whether the County Council of Montgomery County may validly make the payment of a tax a prerequisite to transfer on the assessment records by a State employee.