850 A.2d 1169

**WORTON CREEK MARINA, LLC, et al.**

v.

**Herschell B. CLAGGETT.**

**No. 90, Sept. Term, 2003.**

Court of Appeals of Maryland.

June 7, 2004.

C. Daniel Saunders (Christina Harding Landskroener, on brief), Chestertown, for petitioners.

Willard C. Parker, II (Robert D. Schulte, Wheeler, Thompson, Parker & Counts, LLP, on brief), Easton, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

We are asked to determine the validity of a Kent County ordinance that allows commercial boat moorings located within another riparian's extended property line to remain in place through two months of the wild waterfowl hunting season, rendering the riparian's waterfowl hunting blind sites unusable. The Maryland State Boat Act specifically provides that a local authority may not establish any regulation of a local nature that does not conform to the State's regulations. The State regulation prohibits the placement of moorings that infringe on the rights of riparian property owners. The right to license riparian shorelines that meet specific requirements for the purpose of hunting wild waterfowl is a riparian property right. The amended local ordinance is preempted by the State Boat Act because it permits an act prohibited by the State law. Furthermore, the local ordinance exceeds the authority delegated by the enabling legislation which requires the local ordinance to conform to the State program for the placement of buoys, mooring buoys, and other apparatus used to secure boats in the waters of the State.

I.

Marina Petitioners, Worton Creek Marina, LLC ("Worton Creek"), and Lankford Bay Marina, Inc. are marina owners in Kent County, Maryland.[1] The marinas are the beneficiaries of a "grandfather" provision of the Kent County Code that

---

1. The Kent County Commissioners also appeal the decision of the Court of Special Appeals.

permits group moorings in existence prior to July 1, 1980, at the discretion of the Public Landings and Facilities Board ("Board"), to continue to exist outside of their extended property lines. They are two of seven marinas in the County that have permits to maintain commercial moorings outside of their extended property lines.[2] The permit is obtained pursuant to Article 68 of the Code of Public Local Laws of Kent County (1994) ("KCC"), entitled "Boats and Boating."

On the opposite shoreline from Worton Creek Marina is 340 acres of land with more than 4,000 feet of shoreline owned by Herschell B. Claggett. Fifty-four of the commercial boat moorings maintained by Worton Creek are located within Mr. Claggett's extended property line, and in some instances are located within 100 feet of Mr. Claggett's shoreline. Mr. Claggett is an avid waterfowl hunter who has licensed his shoreline for that purpose pursuant to Md.Code (1973, 2000 Repl.Vol.), §§ 10–607 to 10–609 of the Natural Resources Article (NRA). Pursuant to his license, Mr. Claggett established stationary blinds and off-shore blind sites located within his extended property line for use in the 2000–2001 hunting season.[3]

The controversy in this matter arose when, in August of 2000, Mr. Claggett informed Worton Creek that he intended to use his licensed blind sites for the coming hunting season. Mr. Claggett asked the marina to remove all boats moored within his extended property line area by the September 1 start date of open waterfowl hunting season.[4] Worton Creek,

---

**2.** "Extended Property Line" is defined as "[t]he dividing line between the adjoining riparian properties which extends from the shore." KCC § 68–1.

**3.** An "offshore blind site" is defined as: "a specific location in the water where a person may hunt wild waterfowl from a boat that is tied to or anchored at a stake which has been licensed pursuant to [NR § 10–601 *et seq.*]."

**4.** The wild waterfowl hunting open season is set by the Maryland Department of Natural Resources in conformity with the federal migra-

however, refused to remove the boats. After unsuccessfully appealing to the Board for assistance with having the boats removed, Mr. Claggett filed, in the Circuit Court for Kent County, the first of two declaratory judgment actions naming the County Commissioners as defendants.

Prior to August 17, 2001, KCC § 68–10, entitled "Mooring requirements," contained a paragraph that stated: "Moorings in waterfowl-blind areas shall be cleared of boats during designated waterfowl hunting season unless written permission is given by the riparian property owner." KCC § 68–10(G). In the first suit, Mr. Claggett sought, *inter alia,* a declaration from the Circuit Court regarding the meaning of "designated waterfowl season" as it was used in that section.

After a hearing held on May 5, 2001, the Circuit Court issued a declaration stating that KCC § 68–10(G) "applies to all waterfowl hunting seasons in Kent County, Maryland as those seasons are, from time to time, designated by the Maryland Department of Natural Resources." Additionally, the court ordered the removal of all boats interfering with Mr. Claggett's hunting sites to a distance that would assure safe hunting from those sites. The Commission did not appeal that decision.

On May 1, 2001, Commission president, Ronald H. Fithian, introduced Bill No. 7–2001 to, *inter alia,* amend KCC § 68.10(G) to read as follows:

All vessels on commercial mooring buoys shall be removed from the mooring buoys by November 1, in each year, until March 1 of the following year, unless written permission is given by the riparian property owner to maintain the vessels on the commercial mooring buoys which may be located in front of the riparian owner's property between November 1, in each year, and March 1 of the following year.

The amendment deleted the prior reference to "designated waterfowl season" as the deadline for removing commercial

tory bird rules and regulations. NR § 19–407(b). The 2000 to 2001 waterfowl hunting season began on September 1, 2000.

moorings and replaced it with the November 1 deadline. The amendment was passed on July 3 and took effect on August 17, 2001.

On August 16, 2001, Mr. Claggett filed a second suit seeking a declaration that Bill No. 7–2001 and Chapter 68 of the Code are "illegal, unconstitutional, void and of no force and effect." He also sought an injunction enjoining the Commission from enforcing the provisions of the Bill. On August 23, 2001, Worton Creek, joined by other local marinas, filed a motion to intervene. The motion was granted by the trial court and the marinas were designated parties to the suit.

After an evidentiary hearing held on September 13, and a second hearing for closing arguments held on November 19, the Circuit Court ruled that the amended local regulation was in conflict with the DNR regulation which provides that a local regulation may not infringe upon the rights of any riparian owner. The Court further found preemption by implication existed because the amended regulation conflicted with the comprehensive system for the licensing of water in front of riparian land for hunting wild waterfowl.

On appeal, the Court of Special Appeals held that "the amendment to Kent County's local boat mooring ordinance was preempted by conflict, of the 'prohibit-permit' sort, with the State Boat Act and regulations promulgated thereunder; and also was preempted by conflict, of the 'frustration of purpose' sort, with the State wild waterfowl laws." *County Commissioners of Kent County v. Claggett,* 152 Md.App. 70, 95, 831 A.2d 77, 91 (2003).

With regard to the State Boat Act, the Court of Special Appeals found:

> As amended, however, the local ordinance permits for two months a year "grandfathered" marinas to use their moorings to do what the State Boat Act and accompanying regulations prohibit—infringe on the rights of riparian property owners to use their licensed shorelines for wild waterfowl hunting by surrounding their licensed blinds with boats. Because the local boat mooring ordinance permits

an activity prohibited by the State boat mooring laws, it is preempted by conflict.

*Id.* at 95–96, 831 A.2d at 92.

In discussing the wild waterfowl laws, the Court of Special Appeals found:

> [E]ven though the fields of legislation are not the same, that is boat mooring and wild waterfowl hunting, the amended local boat mooring regulation in this case frustrates the purpose of the State blind site licensing laws by preventing holders of licensed shorelines from using them during part of the wild waterfowl season. The full purpose of the State waterfowl hunting laws set forth in NR 10–601 *et seq.* is to with strict regulation allow priorities of people, with riparian property rights having top preference, to license shorelines for hunting on their waters, by them or by others during the season designated by the DNR. The amended local ordinance in this case stands as an obstacle to that purpose, because it effectively prevents the license holders from being able to use their blind sites.

*County Commissioners of Kent County,* 152 Md.App. at 97, 831 A.2d at 92–93.

We granted *certiorari* to consider these issues. *Worton Creek v. Claggett,* 378 Md. 614, 837 A.2d 925 (2003).

## II.

KCC § 68–10(G), as amended, permits commercial group moorings to remain in waters that have been licensed by the State for the purpose of hunting wild waterfowl for two months of the open hunting season. The question is whether the amended local ordinance is preempted by the State Boat Act and the wild waterfowl hunting regulations. The Court of Special Appeals found that the amended local ordinance was preempted by the State Boat Act by application of the "prohibit-permit" type of preemption (*see infra* pp. 13–17), and, relying on the federal frustration of purpose case law, the Court also found that the amended ordinance frustrated the purpose of the State wild waterfowl laws.

### The State Boat Act

By adoption of Chapter 69, Acts of 1960, now codified at NR § 8–704, the General Assembly passed legislation authorizing DNR to adopt regulations "relating to the placement of buoys, mooring buoys, and other apparatus used to secure, berth, or moor vessels in the waters of the State." NR § 8–704(b). The purpose of the statute is "to protect the public safety, welfare, and recreational interests in waters of the State." *Id.* The statute further provides that "[a] municipality or other local authority may not establish any regulation of a local nature which does not conform with the Department's regulations." NR § 8–704(d).

Pursuant to the statute, DNR adopted regulations codified at COMAR 08.04.13.01 *et seq.* The stated purpose of the regulations is,

> to establish procedures and criteria for the placement of moorings in the waters of the State in order to prevent the placement and use of moorings from interfering with access to and use of the waters of the State by the general public and in order to protect public safety and welfare, commercial fisheries, and recreational interests in the waters of the State.

COMAR 08.04.13.01(A). Section 08.04.13.02 sets forth the general conditions for the placement of moorings. It regulates where moorings may and may not be located. Section 08.04.13.03 addresses the requirements for the establishment of group moorings. Section 08.04.13.04 establishes that either DNR or a local government "that has adequate legal authority to impose the conditions set forth in these regulations" will establish a registration program for all mooring facilities located within the jurisdiction of the locality. The section further provides that if a local government chooses to administer its own program, "the local program may encompass all or part of the standards set forth in this regulation." COMAR 08.04.13.04(B). Section 08.04.13.05 governs enforcement of the regulations. And lastly, section 08.04.13.06, entitled "Property Rights" provides "[t]he placement of a mooring pursuant to

these regulations does not create a property right or an exclusive privilege and does not authorize an infringement upon the rights of any riparian property owner."

Pursuant to NR § 8–704(d), Kent County developed a plan for local administration of a mooring program. The proposed "Mooring Buoy Regulations for Kent County" were submitted to DNR for review. By letter dated September 9, 1980, the proposed regulations were determined to be "in compliance with COMAR regulation 08.04.13.04B." The program as approved by DNR contained language requiring boats to be removed from moorings located within the area of licensed waterfowl blind sites by the beginning of wild waterfowl season. The amended version, however, replaces the reference to removal by the beginning of hunting season with a November 1 deadline—two months into the wild waterfowl hunting season.

Petitioners argue that because COMAR 08.04.13.04(B) does not require local programs to encompass all of the standards set forth in the State program, the local program is not required to adopt language similar to COMAR 08.04.13.06, which prohibits the placement of moorings that infringe upon the rights of riparian property owners. They further argue that the right to license riparian shorelines for the purpose of hunting wild waterfowl is not a riparian right within the meaning of COMAR.

We begin by discussing the second contention first.

### *Riparian Rights*

A person who owns property bordering on, bounded by, fronting upon, abutting or adjacent and contiguous to a body of water is known as a riparian. *Becker v. Litty*, 318 Md. 76, 82, 566 A.2d 1101, 1104 (1989) (internal citation omitted). In addition to the traditional property rights that accompany the ownership of land, riparian property ownership includes rights regarding the use of the water that borders the land. Those rights are created by both common law and by statute. *Id.*

At common law, "the fundamental riparian right—on which all others depend, and which often constitutes the principal value of land—[was] access to water." *People's Counsel for Baltimore County v. Maryland Marine Manufacturing Co., Inc.*, 316 Md. 491, 502, 560 A.2d 32, 37 (1989) (quoting *Steinem v. Romney*, 233 Md. 16, 23, 194 A.2d 774, 777 (1963)). The rights were "generally limited to accretion and reliction." *People's Counsel*, at 501, 560 A.2d at 37.

Common law riparian rights, however, are not the only ones recognized in Maryland. The General Assembly has by statute granted riparian property owners additional rights. *See Harbor Island Marina v. Bd. of County Commissioners of Calvert County*, 286 Md. 303, 316, 407 A.2d 738, 745 (1979) ("Beginning in 1745, and throughout the ensuing years, there have sporadically been legislative enactments recognizing, expanding, and redefining the rights and privileges riparian owners were entitled to exercise in the tidal waters abutting their lands.") (Internal citations omitted.) Those statutory rights include the right to make improvements into the water in front of riparian property, (*see People's Counsel*, 316 Md. at 502–503, 560 A.2d at 37–38, and cases cited therein),[5] and a preference in obtaining a license for the establishment of offshore stationary blinds or blind sites for hunting wild waterfowl in the water in front of riparian property. Md.Code (1973, 2000 Repl.Vol.), § 10–607 of the Natural Resources Article. *See also, Dep't of Natural Resources v. Adams*, 37 Md.App. 165, 177, 377 A.2d 500, 507 (1977) (stating that "the duck blind laws are designed to protect and to give priority to riparian owners"). Statutory rights may "extend beyond what the common law allowed," (*People's Counsel*, 316 Md. at 503 n. 6, 560 A.2d at 38 n. 6 (quoting *Garitee v. City of Baltimore*, 53 Md. 422, 432 (1880))), and be based on more than "the mere access to the navigable portions of the water." *People's*

---

**5.** There are conflicting opinions regarding whether the right to make improvements into the water existed at common law or if it is solely a statutory right. *See People's Counsel*, 316 Md. at 501 n. 5, 560 A.2d at 37 n. 5 and cases discussed therein.

*Counsel,* 316 Md. at 504, 560 A.2d at 38 (internal citation omitted).

The wild waterfowl hunting laws are codified at Md.Code (1973, 2000 Repl.Vol.) § 10–601 *et. seq.* of the Natural Resources Article. The statute provides in relevant part:

(b) Riparian landowners may license their riparian shoreline:

(1) To establish offshore stationary blinds or blind sites for hunting wild waterfowl; and

(2) To prevent other persons from licensing the riparian shoreline for the purpose of hunting wild waterfowl offshore.

NR § 10–607(b). To maintain an offshore blind site, the riparian property owner must own at least 250 yards of shoreline, have the permission of a neighboring property owner to tack the neighbor's shoreline on to the license seeker's shoreline to achieve the requisite yardage, or demonstrate that no other shoreline is licensed within 125 yards of the property line. NR § 10–607(d). In Kent and Queen Anne's Counties, as well as the nontidal waters of the Potomac River and its nontidal tributaries, the right to license the shoreline is an exclusive right of riparians owning at least 250 yards of continuous shoreline. NR § 10–608(g).

A riparian license application must be submitted to DNR by June 1 of each year. NR § 10–607(h)(1)(i)(1). Non-riparian owners, however, may not obtain a license for an offshore blind site until the first Tuesday in August of each year. NR § 10–608(c)(4). Consequently, riparian property owners have the first opportunity to license their property to establish hunting blinds or to prohibit others from obtaining licenses to establish stationary blinds in front of the riparian's property.

In the Court of Special Appeals opinion, Judge Deborah S. Eyler reviewed the long history of the wild waterfowl hunting laws. *See County Commissioners of Kent County,* 152 Md. App. at 84–87, 831 A.2d at 85–87. She noted that the first legislation to regulate duck blinds dates back to 1860. *Id.* at 85, 831 A.2d at 86. The first legislation to grant riparian

property owners a priority in erecting blinds off of their property appeared in 1922. *Id.* In the ensuing years, the right has undergone changes in its application and regulation, however, the preference granted to the riparian property owner to license his shoreline for hunting has remained.

The first priority in some counties, and the sole right in others, to license riparian shoreline for the purpose of hunting wild waterfowl is a statutory right belonging only to the riparian property owner. The right is similar to the statutory right to build improvements into the water in that it is "subservient to the land, and [when] used in connection with the land, enhance its value." *People's Counsel,* 316 Md. at 504, 560 A.2d at 38 (internal citation omitted). We recognize that it is not a traditional riparian right as they were defined at common law. We conclude, however, that the preference given to the riparian property owner by NR §§ 10–607 through 10–609 is, nevertheless, a riparian right. The fact that the right is secured by statute does not diminish the authority by which it exists, authority, we note, that has existed for more than eighty years.

We turn now to the question of whether the local program, as amended, is valid in light of our holding that the right to license riparian shorelines for the purpose of hunting wild waterfowl is a riparian right.

We agree with petitioners that COMAR does not require the local program to encompass all of the standards set forth in the State program. COMAR, however, is not to be read in isolation. Rather, we must interpret it in light of the enabling legislation, NR § 8–704, which specifically states that "[a] municipality or other local authority may not establish any regulation of a local nature which does not conform with the Department's regulations." NR § 8–704(d). Read together, the statute and the regulation authorize local authorities to establish their own rules regarding the implementation of a local program, provided the local program conforms to the State's program. The local program here in question allows boats to remain moored within the extended property line of a

neighboring riparian property owner for two months of wild waterfowl hunting season. The State program, on the other hand, requires boats to be removed by the beginning of the hunting season so as to not interfere with neighboring riparian property owner's right to license his or her shoreline for hunting wild waterfowl. Clearly, the two provisions are not in conformity. We hold that KCC Article 68 exceeds the authority delegated to it by NR § 8–704. To the extent that Bill No. 7–2001 permits boats to remain moored within the extended property line of neighboring riparian property owners, without their permission, for part of the wild waterfowl season, the amendment is invalid.

Furthermore, assuming *arguendo* that the buoy program enabling legislation did not specifically prohibit local regulations that did not conform to the State program, the amended ordinance would nevertheless be invalid by application of the doctrine of conflict preemption.

Under Maryland law, "State law may preempt local law in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption." *Talbot County v. Skipper,* 329 Md. 481, 487–88, 620 A.2d 880, 883 (1993).[6] Relevant to the facts of this case is the doctrine of conflict preemption because the State Boat Act and the local ordinance regulate the same activity.

Judge Eldridge, writing for this Court in the case of *Coalition for Open Doors v. Annapolis Lodge No. 622, Benevolent and Protective Order of Elks,* 333 Md. 359, 635 A.2d 412

---

6. Express preemption occurs when the General Assembly prohibits local legislation in a field by specific language in a statute. *Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 324, 513 A.2d 893 (1986). A local law is preempted by implication when it " 'deals with an area in which the [State] Legislature has acted with such force that an intent by the State to occupy the entire field must be implied.' " *Id.* at 488, 620 A.2d at 883 (*quoting County Council v. Montgomery Ass'n,* 274 Md. 52, 59, 333 A.2d 596, 600 (1975)). Although legislative intent to occupy the field may be determined by several factors, the primary indicia " 'is the comprehensiveness with which the General Assembly has legislated in the field.' " *Talbot County,* 329 Md. at 488, 620 A.2d at 883 (internal citations omitted).

(1994) (hereinafter *"Annapolis Lodge No. 622 "*), discussed the doctrine of conflict preemption. He noted that when a local government ordinance conflicts with a public general law enacted by the General Assembly, the local ordinance is preempted by the State law and is rendered invalid. *Id.* at 379–380, 635 A.2d at 422. *See also, Boulden v. Mayor,* 311 Md. 411, 415–417, 535 A.2d 477, 479–480 (1988); *Rockville Grosvenor v. Montgomery County,* 289 Md. 74, 96–99, 422 A.2d 353, 365–367 (1980); *Montgomery County Bd. of Realtors v. Montgomery County,* 287 Md. 101, 106–110, 411 A.2d 97, 100–102 (1980); *Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 391–393, 396 A.2d 1080, 1085–1086 (1979); *County Council v. Investors Funding Corp.,* 270 Md. 403, 421–424, 312 A.2d 225, 235–237 (1973); *City of Baltimore v. Sitnick,* 254 Md. 303, 310–318, 255 A.2d 376, 378–382 (1969). The local ordinance is preempted when it either prohibits an act that under State law is permitted, or it permits an act that under State law is prohibited. *Annapolis Lodge No. 622,* 333 Md. at 380, 635 A.2d at 422 (quoting *Allied Vending v. Bowie,* 332 Md. 279, 297 n. 12, 631 A.2d 77, 86 n. 12 (1993) and *Talbot County v. Skipper,* 329 Md. 481, 487 n. 4, 620 A.2d 880, 882–883 n. 4 (1993)). We have referred to this type of conflict preemption as "prohibit-permit" conflict. *Annapolis Lodge No. 622,* 333 Md. at 380 n. 39, 635 A.2d at 422 n. 39.

The landmark case in Maryland regarding the issue of preemption is *Rossberg v. State,* 111 Md. 394, 416–417, 74 A. 581, 584 (1909), in which we enunciated the rule as follows:

> The true doctrine, in our opinion, is concisely stated in 28 Cyc. 701, as follows: "Such ordinances must not directly or indirectly contravene the general law. Hence ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or constitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void."

Not all conflicts, however, fit squarely within the "prohibit-permit" category. *Annapolis Lodge No. 622,* 333 Md. at 380 n. 39, 635 A.2d at 422 n. 39. "A local law may conflict with a

state public general law in other respects and will, therefore, be preempted." *Id.* In *Montgomery County Bd. of Realtors v. Montgomery County,* 287 Md. 101, 411 A.2d 97 (1980), we held that a local tax on the variance between the assessed value of real estate and the actual sale price of the real estate conflicted with the State scheme for assessment of real property and was invalid. The local statute, entitled "Real Property Tax Recapture," provided that upon the sale of real property within the County, a tax would be due on the amount which the value of the property on the date of recognition exceeded the assessed valuation of the property. The Court found that the local statute was an "attempt by Montgomery County to reassess and tax real property after the date of finality [and] is in direct conflict with the provisions of [the State scheme for the assessment and levy of taxes] relative to the date of finality and the process to be followed where an erroneous assessment is made." *Id.* at 109–110, 411 A.2d at 101–102. Although the local statute did not specifically permit or prohibit an act permitted or prohibited by the State, it was nevertheless invalid because it was in direct conflict with a State statute regulating the same matter. *See also, Montgomery County v. Board of Supervisors of Elections for Montgomery County,* 311 Md. 512, 536 A.2d 641 (1988) (holding that two Montgomery County ballot proposals that would have amended the County Charter regarding the powers of the County Executive to appoint members to the Montgomery County Planning Board were invalid because they conflicted with sections of the Maryland Code that provide for the appointment of the same offices); *East v. Gilchrist,* 296 Md. 368, 463 A.2d 285 (1983) (holding that a County Charter amendment that prohibited the expenditure of County money for the operation of a landfill in a residential area was in conflict with a State general law that requires counties to raise the necessary funds to operate a landfill once a site within the locality has been chosen by the State).

In *Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 707 A.2d 829 (1998), this Court was asked to determine whether a section of the Anne Arundel County Code that required marinas with more than 100 slips to be

separated from shellfish beds by 2,640 feet was preempted by "State law" that prohibited the harvesting of shellfish from beds located within 200 feet of a marina.[7] The purpose of the State document was to restrict the taking of shellfish because of possible pollution sources from nearby marinas. *Id.* at 210–11, 707 A.2d at 839. In holding that there was no preemption by conflict, we stated:

> Assuming *arguendo* that the document relied on by Holiday Point can properly be viewed as "State law" for the purpose of the doctrine of preemption by conflict, there is no conflict between Article 28, § 5-108(e), of the Anne Arundel County Code and the State document. The local ordinance restricts the location of marina facilities, whereas the State document restricts the harvesting of shellfish.... They regulate entirely separate and distinct activities.

*Id.* at 211, 707 A.2d at 840.[8]

As previously discussed, the amended ordinance permits an activity that is prohibited by the State program—it allows the mooring of boats in waters that for two months of the year infringes upon the rights of neighboring riparian property owners. The right to license riparian shoreline for the purpose of hunting wild waterfowl is a riparian right within the meaning of COMAR. Consequently, that right may not be infringed upon by the placement of buoys pursuant to NR § 8-704. This is a classic example of "prohibit-permit" type of

---

7. The document relied upon as "State law" was a document published by the Maryland Department of the Environment entitled "Assessment Guidelines For Determining Shellfish Growing Area Classification In And Around Marinas." *Holiday Point*, 349 Md. at 210, 707 A.2d at 839. It was "neither a statute nor a regulation." *Id.*

8. Petitioners argue that pursuant to *Holiday Point* the local ordinance here may not be preempted by conflict with the wild waterfowl laws because they regulate separate and distinct activities. We need not reach this question because we hold that the local ordinance is preempted by the State Boat Act, a regulation that clearly regulates the same activity. We leave open for another day, however, the question of whether the regulation of two activities, while distinct on their face, may be so interrelated in application that the doctrine of conflict preemption might nevertheless apply.

conflict preemption. We hold that KCC 68–10(G), as amended, is void because it permits an activity that is expressly prohibited by State law, NR § 8–704.

### III.

The Court of Special Appeals held that the amended local ordinance was preempted by both the State Boat Act and the wild waterfowl hunting laws. In holding that the ordinance was preempted by the wild waterfowl hunting laws, the intermediate appellate court applied the federal doctrine of conflict by "frustration of purpose." *County Commissioners*, 152 Md. App. at 94–95, 831 A.2d at 91.

 The federal doctrine of preemption is based on the fundamental principle of the Federal Constitution that Congress has the ability to preempt state law. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (*see also*, U.S. Const. Art. VI, cl. 2). State law will be preempted by federal law "[w]hen Congress intends federal law to 'occupy the field' ... [a]nd even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute." *Id.* Conflict preemption exists in two forms: (1) the "prohibit-permit" type, and (2) what is generally referred to as "frustration of purpose" conflict.

> We will find preemption where it is impossible for a private party to comply with both state and federal law, and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Id.* at 372–373, 120 S.Ct. 2288 (internal citations omitted) (alterations in original).

Our research indicates that no previous reported Maryland appellate court opinion has applied the federal doctrine in resolving a conflict between State and local law. In fact, we are unaware of any state that has applied the doctrine to resolve conflicts between state and local law. Because the controversy may be resolved without invoking the federal

doctrine, we decline to address its applicability to this matter or Maryland conflict law in general.

To the extent that the opinion of the Court of Special Appeals may be read to endorse the applicability of the federal doctrine of preemption of the "frustration of purpose" type to conflicts between State and local law, we disavow that reasoning at this time. Under Maryland law the local ordinance is invalid irrespective of federal jurisprudence.

For the forgoing reasons, we hold that Article 68 of the Code of Public Local Laws of Kent County, as amended by Bill No. 7–2001, is void to the extent it permits boat moorings to remain in the extended property line of a neighboring riparian property owner for any part of wild waterfowl hunting season without the neighboring riparian property owner's permission. The ordinance, as amended, is void because it exceeds its authority pursuant to the State Boat Act and accompanying regulations, and it is preempted by conflict of the prohibit-permit type.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONERS.**