REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1388

September Term, 2013

SUPERVISOR OF ASSESSMENTS OF
MONTGOMERY COUNTY

v.

ANN LANE

Hotten,
Leahy,
Eyler, James R.
 (Retired, Specially Assigned),

JJ.

Opinion by Eyler, James R., J.

Filed: April 2, 2015

On December 28, 2010, Ann Lane, appellee, was notified by the Supervisor of Assessments of Montgomery County, appellant, that her residence, a condominium in Chevy Chase, Maryland, was assessed at a value of $2,130,000. The assessment notice stated that the valuation was "effective January 1, 2011," the "date of finality." Appellee pursued administrative appeals to and including the Maryland Tax Court. Following a hearing, the Tax Court reduced the assessment of appellee's condominium to $2,075,000.

Unhappy with the amount of the reduction, appellee filed a petition for judicial review in the Circuit Court for Montgomery County. The circuit court held that the Tax Court committed an error of law in considering sales of property that occurred after January 1, 2011. The court also concluded that the Tax Court's decision was arbitrary and capricious because the assessed value of appellee's condominium was significantly higher than similar condominiums in the same building. The court ordered a remand of the matter to the Tax Court for reconsideration and reduction of the assessment. This appeal followed.

Appellant presents the following questions for our review:

I. Does substantial evidence in the record support the Tax Court's use of subsequent sales where all such sales occurred in the building where Mrs. Lane's residence is located, all were identical to Mrs. Lane's residence in terms of age and condition, and all involved contracts of sale consummated relatively close to the date of finality?

II. Was it legally correct for the Tax Court to admit into evidence and consider comparable property sales recorded after the January 1, 2011, date of finality in order to value appellee's condominium as of that date?

For the reasons which follow, we reverse the decision of the circuit court and affirm the decision of the Tax Court.

**FACTS AND PROCEEDINGS**

Appellee owns and occupies a condominium ("unit 1003") on the tenth floor of the seventeen-story Parc Somerset building in the Somerset House development located in Chevy Chase, Maryland. The development consists of three similar buildings. Parc Somerset is the newest and most desirable of the three. On December 28, 2011, appellant notified appellee that her condominium had been assessed at $2,130,000, effective January 1, 2011, an increase of approximately 11% over the prior assessment of $1,920,000.

Appellee, along with the owners of nine other condominium units in the Somerset House development, administratively appealed their assessments to the Property Tax Assessment Appeals Board for Montgomery County (the Appeals Board). The Appeals Board consolidated the appeals. Two of the units on appeal were 703 and 803, located on the west side of Parc Somerset, the building in which appellee's condominium is located. Units 703 (seventh floor) and 803 (eighth floor) are directly below appellee's unit. Units located directly above and below each other from the first floor to the top floor are known as a "stack." Units with numbers ending in "03" are in the "03 stack." Units in the 03 stack, located on floors 1 through 12, are the same size (2,498 square feet) and have the same floor configuration. The Appeals Board refused to consider sales subsequent to January 1, 2011. It lowered the assessment on unit 803 to $1,840,000 and the assessment on unit 703 to $1,830,000. The initial assessed value is unclear. The Appeals Board did not lower the

2

assessment on appellee's unit 1003, stating only that "floor premium should be higher than lower comparable units." Appellee appealed to the Tax Court.

Appellee introduced an affidavit from Zelda Heller, a realtor who coincidentally lives in Parc Somerset, who averred that when the building was constructed, the developer attached a premium of $10,000 per higher floor to the sales prices. She opined that the accuracy of the premium has been borne out by the market.

Bruce Lane, appellee's husband, testified that he has lived in unit 1003 since 2001 and has kept track of unit sales within the Somerset House development. He noted that unit 803 in Parc Somerset was assessed at $10,000 more than unit 703, consistent with Ms. Heller's affidavit. Mr. Lane testified that, although there had not been any sales in Parc Somerset in 2010, sales in that building in 2008 and 2009, not necessarily of units identical to unit 1003, reflected an increase in value of 3.83% in that time period. He further testified that unit 803 had been appraised at $1,649,000 on January 3, 2011, acknowledging that the appraisal was for refinancing, not a sale. Mr. Lane reasoned that if the pattern of a $10,000 per floor premium were applied, unit 1003 would have a value of $20,000 more than unit 803, *i.e.*, $1,669,000.

Mr. Lane testified that condominium sales in the other two buildings in the development, while not offered as being comparable to unit 1003, showed an increase in value by 0.41% between 2007 and 2008, a decrease in value by more than 15% between 2008 and 2009, and a decrease in value by 5.56% between 2009 and 2010. Mr. Lane offered all

3

of the above sales as evidence of the amount of the floor premium, not as comparable sales to establish value.

Leonard Nichols, a real estate appraiser, testified on behalf of appellant. He relied on three sales of condominiums in Parc Somerset, in May 2011, which he concluded were comparable to unit 1003. Over objection, he described the three sales.

One of the sales was of unit 207, which closed on May 27, 2011. The unit contains 2441 square feet. The sales price was $2,200,000. Using the sales price, and adding $80,000 floor premium and another $50,000 because of greater size, Mr. Nichols arrived at a value of $2,330,000 for unit 1003.

The next comparable was a sale of unit 507, which closed on May 18, 2011. The unit contains 2441 square feet. The sales price was $2,075,000. After making adjustments similar to those made on unit 207, Mr. Nichols arrived at a value of $2,175,000 for unit 1003.

The third comparable was a sale of unit 707, which closed on May 3, 2011. The unit contains 2,441 square feet. The sales price was $1,995,000. After making adjustments similar to those made on the other two comparables, Mr. Nichols arrived at a value of $2,050,000 for unit 1003.

On cross-examination, Mr. Nichols acknowledged that he had no knowledge of changes in the real estate market between January and May of 2011. He testified that he did not consider sales of comparable units which occurred prior to the date of finality because there were none. He explained that there were no sales in Parc Somerset in 2010 and sales

4

in the other two buildings were not comparable. He also testified that he believed the sale of unit 707 in Parc Somerset was the "best comparable" for valuing unit 1003.

In closing, appellee argued that the most accurate valuation of unit 1003 would be to accept the refinancing appraisal of unit 803 and add $20,000 in floor premiums, thereby arriving at a value of $1,669,000. Alternatively, counsel argued that valuing unit 1003 at $1,860,000 would be appropriate given that the owners of units 703 and 803 had appealed their assessments, and the Appeals Board had reduced their assessments to $1,830,000 and $1,840,000, respectively. Appellant argued that it used the only sales that were comparable and among other adjustments, added a $10,000 per floor premium. At the conclusion of the hearing, the Tax Court reduced the assessment of appellee's unit to $2,075,000.

Following the Tax Court's ruling, appellee petitioned for judicial review. The circuit court concluded that the Tax Court had committed an error of law in considering sales that occurred after January 1, 2011. In conclusion, the court stated:

> But the fact of the matter is, in this situation, the Court finds, number one, they should not have considered, and this will be the Court's opinion, they should not have considered these – and it's not a question of considering them, they used them. In the record those are the only assessments that the tax board used to come up with the number that they have on this unit; that's not fair. That's arbitrary and capricious and it's not called for by the statute, number one. So I find that was legal error.
>
> Number two, I find that the fairest, easiest, simplest way to do this would be to do it exactly the way they did the units, the same exact units, that were under this unit. And it seems to me totally arbitrary, totally capricious, to try and use appraisals from . . . same building different sized units, different size of the floor where you've got two that you reduced to a given number on appeal and not to grant it to this. . . . show me why this isn't arbitrary and capricious and

5

you say it's not arbitrary and capricious because we used three appraisals from May, past the [date of finality], I've got no choice. I find it to be arbitrary and capricious not to have assessed this in line with the other two units that were also appealed. I mean, there's a logical way, it appears that they separated those two in reducing them. So the Court – I don't know do I have to remand it back to them to do what I said?

* * *

I don't think I can put a value on the property. I think I have to remand it back to the tax court to reduce it in accordance with the findings of the Court and in . . . line with the unit on the seventh floor and the eighth floor.

Additional facts will be provided below as our analysis requires.

**Standard of Review**

The Tax Court's decision is reviewed *de novo*. Md. Code (2010 Repl. Vol.), Tax-General, § 13-523. ("An appeal before the Tax Court shall be heard *de novo* and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury.")

With respect to appellate review of a decision of the Tax Court, the Court of Appeals has explained:

When reviewing an administrative decision from the Maryland Tax Court, we generally review that decision directly, not the decision of the circuit court on judicial review. *Comptroller of Treasury v. Science Applications Intern. Corp.*, 405 Md. 185, 192 (2008). The decision of the Tax Court will be affirmed unless that decision is not supported by substantial evidence appearing in the record or is erroneous as a matter of law. *Comptroller of the Treasury v. Blanton*, 390 Md. 528, 535 (2006); *State Dept. of Assessments and Taxation v. Consol. Coal Sales Co.*, 382 Md. 439, 454 (2004). We have previously noted that "the interpretation of the tax law can be a mixed question of fact and law, the resolution of which requires agency expertise." *Comptroller of the Treasury v. Citicorp Intern. Communications, Inc.*, 389 Md. 156, 164 (2005). The Tax Court's decision, however, will be overturned if it was based on an

6

error of law. *Consol. Coal Sales Co.*, 382 Md. at 454, citing *Supervisor of Assessments v. Hartge Yacht Yard, Inc.*, 379 Md. 452, 461 (2004).

*Supervisor of Assessments v. Stellar GT*, 406 Md. 658, 669 (2008) (internal parallel citations omitted).

## DISCUSSION

For property tax assessments, "the value of real property shall be its value on the date of finality." Md. Code (2007 Repl. Vol.), Tax-Property Article ("Tax-Prop"), § 8-102.

With respect to the term "date of finality," Tax-Prop § 8-104(b)(1)-(2), provides, in pertinent part:

> (b)(1) . . . the Department or supervisor shall value all real property once in every 3-year cycle based on an exterior physical inspection of the real property.

> (2) The date of finality for real property that is valued under this subsection is the January 1 immediately before the 1st taxable year to which the assessment based on the new value is applicable.

"Assess" means "to determine the . . . full cash value" of real property. Tax-Prop § 1-101(b)(1). "Value" means "the full cash value of property." Tax-Prop § 1-101(nn). "'Date of finality' means January 1, when assessments become final for the taxable year next following." Tax-Prop § 1-101(i).

Appellee argues that the language in Tax-Prop § 8-104(b) clearly prohibits a consideration of sales subsequent to the date of finality and that this is consistent with its legislative purpose, *i.e.*, to protect against retroactive assessments. We disagree with

7

appellee's reading of the statute. The statute states that the property in question must be valued as of the date of finality. It does not specify how that is to be done.

Appellee, relying on *Montgomery County Board of Realtors, Inc. v. Montgomery County,* 287 Md. 101 (1980), and *Stellar GT*, 406 Md. 658, argues that considering sales that occurred after the date of finality constitutes a retroactive assessment. In *Montgomery County Board of Realtors*, the Court was dealing with an ordinance enacted by the County. The ordinance imposed a tax on the transfer of real property on the amount by which the value on the date of transfer exceeded the existing assessed value. The Court concluded that the ordinance was in direct conflict with the date of finality. 287 Md. at 109-110. The effect of the ordinance was to value the property as of the date of transfer. That is not the situation in the case before us.

Similarly, *Stellar GT* is not on point. Real property is assessed every three years. Tax-Prop § 8-104(b)(1). In *Stellar GT*, 406 Md. at 662, the Court was concerned with a reassessment during the three-year cycle, a process that is permitted under certain circumstances. *See* Tax-Prop § 8-104(c)(1). The case before us involves an assessment, not a reassessment.

We are advised that the State Department of Assessments and Taxation and its local taxing authorities have, since 1992, followed the practice of considering sales after the date of finality to value property as of the date of finality when such sales are found to be reasonably close in time and otherwise comparable. Such information is considered and

8

weighed along with all other relevant evidence. Contrary to appellee's argument, the statute in question does not bar consideration of such sales. The goal of the assessment is to determine value. The Tax Court simply follows a procedure that is normal in other contexts, *i.e.*, to consider all comparable sales before and after the date of valuation. *See Hance v. State Roads Comm'n of Md.*, 221 Md. 164, 173-176 (1959) (in condemnation context, comparable sales before and after valuation date are admissible if not too remote in time). The valuation of real property is not an exact science. The admissibility of evidence is determined by relevancy. The weight to be accorded to a particular piece of evidence is determined by the arbiter, in this instance, the Tax Court.

Appellee also contends that the difference in assessed values of units 703 and 803 as compared to unit 1003 is arbitrary and capricious and violates her rights under Article 15 of the Maryland Declaration of Rights. Article 15 of the Constitution provides, in pertinent part,

> that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State [and its subdivisions] shall be uniform within each class or sub-class of land, improvement on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy. . . .

Appellee points out that the original assessment notice, dated December 28, 2010, stated that unit 1003 had been reviewed to "determine the new market value effective

9

January 1, 2011[,]" and, further, that "[t]he new market value is based upon market data available prior to that date."

When the initial assessment was made, the conclusion necessarily had to be based on information available prior to January 1, 2011. We are advised that initial assessments, valuing thousands of properties, are based on "computer assisted mass appraisal." At a Tax Court hearing, appellant and other similar authorities value a property using a traditional sales approach directed to the property in question. Because proceedings in Tax Court are *de novo*, evidence in Tax Court is generally not the same as information that was used in earlier administrative proceedings.

Article 15 requires that the rules for determining assessed value be uniform, *see Verkouteren v. Supervisor of Assessments*, 38 Md. App. 216 (1977), not that assessments of individual properties be the same. The latter would be impossible to achieve. If condominium units in a building were identical in size and floor plan to units in another building a block away, under appellee's reading of Article 15, the assessed values would have to be the same. The analysis would never end because it would involve an undertaking to identify all potentially identical units and a comparison of assessments of those units. Property owners might argue that units several blocks away are identical. It is simply not workable. For that and other reasons, previously assessed values, as distinguished from appraisals and sales prices, are not considered in determining assessed values. *See Samet v.*

10

*Supervisor of Assessments*, 290 Md. 357, 360-361 (1981) (under assessment of neighboring properties is not ground for relief).

Appellee argues that the Tax Court did not consider evidence of the sales, prior to January 1, 2011, in the two buildings other than Parc Somerset. Appellee further argues that the three post-January 1, 2011 sales were on the east side of Parc Somerset, not the west side, and were not the same size as unit 1003. With respect to the first point, the Tax Court clearly considered all evidence, expressly referencing it. With respect to the second point, the Tax Court considered and weighed all evidence, as it was entitled to do. *See Fields v. Supervisor of Assessments*, 255 Md. 1, 3-5 (1969) (in challenge to amount of assessment of real property, relative weight to be accorded to factors relevant to value is for the Tax Court). The Tax Court, because of its expertise, is entitled to a certain amount of deference. We are satisfied that the Tax Court's decision is supported by substantial evidence.

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO CIRCUIT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE MARYLAND TAX COURT. COSTS TO BE PAID BY APPELLEE.**