REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2653

September Term, 2015

WILLIAM DABBS, ET AL.

v.

ANNE ARUNDEL COUNTY, MD.

Wright,
Graeff,
Bair, Gary E. (Specially Assigned),

JJ.

Opinion by Wright, J.

Filed: March 30, 2017

This appeal arises from the Circuit Court for Anne Arundel County's entry of a declaratory judgment in favor of appellee, Anne Arundel County (the "County"), as to all counts and claims stated in a class action complaint filed against it on November 4, 2011, by appellants, William Dabbs, Sally Trapp, Samuel Craycraft, and Roberta Craycraft, "individually and on behalf of all others similarly situated." Appellants had sought refunds of impact fees that, following the fiscal year ("FY") of collection, were not expended or encumbered within six FYs. Following a hearing on November 20, 2014, and after receiving memoranda from the parties, the circuit court entered judgment in the County's favor on January 27, 2016, ordering that appellants "take nothing in this action." The court also denied appellants' motion to revise class definition, as well as their motion for an accounting of County impact fee collections, expenditures, and encumbrances. On February 11, 2016, appellants noted this appeal.

## Questions Presented

For clarity, we have combined, renumbered, and rephrased the questions presented by appellants, as follows:[1]

1. Did the circuit court err in concluding that the "rough proportionality" or "rational nexus" test established by the Supreme Court of the United States has no application to development impact fees?

2. Did the circuit court err in finding that the enactment of Bill No. 27-07 did not interfere with the vested rights of appellants to recover impact fee refunds?

---

[1] In their brief, appellants presented six questions, but their argument consisted of 15 subparts.

1

3. Did the circuit court err in concluding that appellants could not recover as damages $9.9 million that the County transferred from the General Fund to the Impact Fee Special Fund in 2008?

4. In determining the appropriate use of impact fees under its Impact Fee Ordinance, is the County required to use the definition of "State Rated School Capacity" that the State applies for school construction funding purposes?

5. Did the circuit court err in denying appellants' motion for an accounting of County impact fee collections, expenditures, and encumbrances?

6. Did the circuit court err in finding that the prospective repeal in Bill No. 71-08 of the County's impact fee refund provision, codified in § 17-11-210(b), had no effect on appellants' vested rights to refunds?

For the reasons that follow, we affirm the circuit court's judgment.

**Facts**

**I.     The County's Impact Fee Ordinance**

Pursuant to the authority set forth in Chapter 350, Acts of 1986, and codified in Subtitle 2 of Title 11 of Article 17 (the "Impact Fee Ordinance") of the Anne Arundel County Code ("County Code"), the County may impose impact fees for the purpose of requiring new development to pay its proportionate share of the costs for land and capital facilities necessary to accommodate development impacts on public facilities.  § 17-11-202(1).[2]  Impact fees must be paid by any person who improves real property causing an impact on public facilities before a building permit for the improvement may be issued. §§ 17-11-203, 17-11-206.

---

[2] Unless otherwise specified, all citations will be to the County Code.  The code has since been amended numerous times.  The language of the relevant sections at the pertinent times is undisputed by the parties.

Under § 17-11-209(a), all funds collected from impact fees must be used for eligible capital projects, that is, capital projects for the "expansion of the capacity" of roads and schools, and not for replacement, maintenance, or operations. The County has been divided into impact fee districts and impact fees generally must be used for capital improvements within the "district from which they are collected." § 17-11-209(d). The County Planning and Zoning Officer ("PZO") determines the extent to which capital projects are eligible for impact fee use. *See generally* Impact Fee Ordinance.

Section 17-11-210(b) provides that, if the impact fees collected in a district are not expended or encumbered within six FYs following the FY of collection, the County Office of Finance must give notice to current property owners that impact fees are available for refund. Section 17-11-210(e), however, allows the PZO to "extend for up to three years the date at which the funds must be expended or encumbered." Such an extension may be made "only on a written finding that within a three-year period certain capital improvements are planned to be constructed that will be of direct benefit to the property against which the fees were charged."

The County began imposing impact fees in FY 1988. On December 20, 2001, the County Council enacted Bill No. 96-01, which, effective February 3, 2002, authorized the County to use impact fees for temporary structures (classrooms) provided they expanded the capacity of the schools to serve new development. Then, on May 22, 2007, the County Council enacted Bill No. 27-07, which codified the procedures which the County had utilized to count impact fee expenditures and encumbrances for purposes of determining impact fee refunds under § 17-11-210(b). Because Bill No. 27-07 did not

3

effect a substantive change in policy, the County Council made Bill No. 27-07 retroactive to fees collected in FYs 1988-1996.

On November 6, 2008, the County Council enacted Bill No. 71-08 and repealed, prospectively, the impact fee refund provisions previously set forth in § 17-11-210. The repeal was effective on January 1, 2009, and barred claims that were not ripe as of the effective date of the repeal, that is, the repeal barred claims for refunds of fees collected after FY 2002.

## II.     Plaintiffs' Claims

This action is the second lawsuit in which class plaintiffs have sought refunds of impact fees pursuant to § 17-11-210. In the first action, the circuit court ruled that it would only resolve claims for refunds of impact fees collected in FYs 1988-1996, namely the FYs that were ripe for review at that time. *Halle Dev., Inc. v. Anne Arundel Cty.*, Case No. 02-C-01-069418. Thus, in 2011, appellants filed the present claim ("*Dabbs*"), seeking refunds of fees collected in and after FY 1997.

### A.     *Halle*

In 2008, this Court, in *Halle*, explained the manner in which § 17-11-210 should be applied to calculate whether impact fees are available for refund. *Anne Arundel Cty. v. Halle Dev., Inc.*, No. 2552, Sept. Term, 2006 (Feb. 7, 2008, *on reconsideration*, May 7, 2008). We ruled that the County was entitled to count impact fee encumbrances in calculating refunds after the close of six FY periods and remanded the case to the circuit court for the purpose of recalculating refunds accordingly. Specifically, we rejected the County's argument that the case should be remanded to the PZO for new extension

4

decisions, and we ruled that the County Code required any decision by the PZO to extend the period for using impact fees be validly made before the end of the six FY period. However, we agreed with the County that (1) in applying its procedure to count impact fees encumbered for the purpose of determining refunds, the County was not attempting to encumber impact fees "retroactively," and (2) the County Code did not require the County to count impact fee encumbrances as part of the annual budget process and within the six FY period. We stated:

> Owners contend that the circuit court's ruling is supported by the refund provisions in Code § 17-11-210. They argue that the County is attempting retroactively to encumber funds. They assert that the circuit court correctly ruled that for refund purposes a PZO determination that impact fee funds had been encumbered, must have been made within the six years following collection of the funds. This analysis confuses encumbrance with extension. As we have seen in Part I, *supra*, there was a time limit prior to which the fact-finding of extension must be made, and made in the required format, in order to effect an extension. Section 17-11-210 does not mandate any format for effecting an encumbrance.

*Halle*, Feb. 7, 2008 opinion at 19-20.

We also rejected the circuit court's reliance on § 4-11-102(c)(11) for the proposition that impact fee encumbrances had to be counted as a part of the annual budget process, stating:

> Code § 4-11-102(c)(11), also cited by the court and requiring the capital budget and capital program to include "any amounts encumbered and expended by April 1 of the current and prior year," is satisfied by the current format of that budget and program, as described above. That information advises the County Council of matters of historic fact. The section does not require that encumbrances be recorded in the accounts of a particular impact fee special fund when those encumbrances are made in the future, during the fiscal year that is the subject of a particular capital budget.

5

*Id.* at 19.  In short, we ruled:

> Accordingly, we shall remand on the encumbrance issue for a determination of the amount of impact fees that had been encumbered, but unexpended, within six years following their collection.

*Id.* at 20.

Thereafter, the County filed a motion for reconsideration requesting that this Court rule that the County was also entitled to count impact fees encumbered in connection with plaintiffs' claims for refunds of school impact fees.  We granted the motion in a May 7, 2008 opinion, stating:

> [In our February 7, 2008 opinion,] we held that the circuit court erred in failing to include in the six-year test encumbrances made within a six-year period after the year of receipt in computing the debit against fee receipts.
>
> \*    \*    \*
>
> This Court's rationale in its February 7, 2008 opinion with respect to transportation project encumbrances, argues the County, is equally applicable to the accounting record for encumbrances for school projects. Because we held in our February 7, 2008 opinion that the ground on which the circuit court relied in rejecting encumbrances as a setoff under the six-year test was erroneous, the court, on remand, should consider not only encumbrances for transportation projects, but for school projects as well when applying the six-year test.

*Halle*, May 7, 2008 opinion at 7-8.

Although Bill No. 27-07, which codified the County's procedure for counting impact fee encumbrances, had been enacted prior to this Court's 2008 opinion and was retroactive, we ruled that the amended ordinance did not modify the concept of encumbrance which had been in the County Code from the enactment of Bill 58-87 in 1988, and thus, it was unnecessary to address the retroactivity of the legislation because it did not change law or policy.

6

Following this Court's 2008 decision in *Halle*, both the County and the class plaintiffs filed petitions for a writ of *certiorari* in the Court of Appeals. The County requested that the Court review the Court of Special Appeals' ruling that the case could not be remanded to the PZO to make new extension decisions. The class plaintiffs, on the other hand, requested that the Court of Appeals review the Court's ruling that the County was not "retroactively encumbering" impact fees by utilizing the procedure (subsequently codified in Bill No. 27-07) to count them after the case had been filed. Plaintiffs argued that they had vested rights to an accrued cause of action to recover refunds after they filed suit on February 21, 2001, and thus, the case could not be remanded to permit the County to either grant new extensions, or count encumbrances.

The Court of Appeals granted the County's petition. *Anne Arundel v. Halle*, 405 Md. 350 (2008). However, it denied plaintiffs' cross-petition, thus declining to review the encumbrances issue. The Court of Appeals then affirmed this Court on all issues for which it granted *certiorari* and explained that the class plaintiffs did not have vested rights which would preclude the County from counting encumbrances after the close of the six FY periods. *Anne Arundel Cty. v. Halle Dev., Inc.*, 408 Md. 539 (2009). It stated:

> This case is not about vesting. It is about the PZO's lack of authority under the impact fee ordinance to go back and make administrative decisions that it failed to effectively execute when permitted. Indeed, the Owners may not be vested in their right to a refund. Whether they are entitled to a refund and in what amount it will be determined by the Circuit Court on remand. The full refund amount determined by the Circuit Court may be reduced if the County is able to prove that it, in fact, encumbered the impact fee funds within six years.

*Id.* at 559. In an accompanying footnote, the Court of Appeals explained:

7

> The Court of Special Appeals held in its May 7, 2008 unreported opinion that the Circuit Court, on remand, should re-determine the amount that the County had timely encumbered for eligible capital improvements, and in doing so, "should consider not only encumbrances for transportation projects, but for school projects as well when applying the six-year test." We did not grant *certiorari* as to this issue, and thus the decision of the intermediate appellate court is law in this case. Accordingly, the determination by the Circuit Court as to the amount of the refund may be modified on remand, and the Owners' rights in any specific refund award are not vested.

*Id.* at 559 n.7.

On remand, the circuit court stated that this Court's 2008 opinion in *Halle* was the law of the case and, in applying our mandate, reduced the amount of refunds from $4.7 million to $1.3 million. The circuit court, however, stated that it disagreed with part of our opinion, and instead it expressed continued belief that the County was not entitled to count encumbrances because the County was required to do so during the FYs under review as a part of the annual budget process. To that end, the circuit court invited the Court of Appeals to review the issue of encumbrances. The circuit court then made certain "alternate findings" in the event that the Court of Appeals decided to review the case.

Subsequently, the plaintiffs filed a petition for writ of *certiorari*, asking the Court of Appeals to again review whether the enactment of Bill No. 27-07 interfered with their vested rights. The Court of Appeals, however, declined to do so, and this Court, in 2013, affirmed the circuit court's final judgment ruling that our 2008 opinion was the law of the case. *Halle Dev., Inc. v. Anne Arundel Cty.*, No. 0327, Sept. Term, 2011 (July 29, 2013). We stated:

In its March 25, 2011 opinion, the circuit court correctly ruled that our prior holdings in this case -- and the prior holdings of the Court of Appeals in this case -- are the law of the case which are binding on the circuit court.

\* \* \*

The circuit court ruled in its December 30, 2004 opinion that the definition of impact fees encumbered, and the County's procedure for counting encumbrances was reasonable and lawful. The circuit court, however, also ruled that the County could not retroactively count encumbrances because the impact fees must be counted "as part of the annual budget process, no later than the sixth fiscal year."

On appeal, we held that the County was not "attempting retroactively to encumber funds." Accordingly, we ordered "remand on the encumbrance issue for a determination of the amount of impact fees that had been encumbered, but unexpended, within six years following their collection." Similarly, in remanding the case to the circuit court, the Court of Appeals observed that:

> [T]he circuit court's task on remand will only require that the court determine whether and how much refund is due, in total, after considering all impact fee amounts that the County has timely encumbered for eligible capital projects.

*Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 571-72 (2009). The Court of Appeals also pointed out that:

> The Court of Special Appeals held in its May 7, 2008 unreported opinion that the Circuit Court, on remand, should re-determine the amount that the County had timely encumbered for eligible capital improvements, and in doing so, "should consider not only encumbrances for transportation projects, but for school projects as well when applying the six-year test." **We did not grant *certiorari* as to this issue, and thus the decision of the intermediate appellate court is law in this case. Accordingly, the determination by the Circuit Court as to the amount of the refund may be modified on remand, and the Owners' rights in any specific refund award are not vested.**

*Id.* at 559, n.7 (emphasis added).

9

Here, Owners raise issues relating to the determination of impact fee encumbrances to determine refunds. As set forth, *supra*, our comprehensive 2008 opinion addressed this issue as a question of law. Accordingly, the circuit court was bound by the law of the case as to this legal issue.

*Id.* at 4-6.

We also determined that plaintiffs' argument that the retroactivity provision in Bill

No. 27-07 unconstitutionally interfered with their vested rights was barred by the law of

the case doctrine:

> Next, Owners argue that Bill 27-07 "operates retrospectively to divest and adversely affect vested rights, impacts the obligation of contracts, and violates the due process clause." Owners further argue at length that the County Council "was not permitted to retroactively modify the County's impact fee ordinance, by design, and reduce the amount of impact fees refunded 20 years after the events here have occurred." The County argues that these arguments are barred under the law of the case doctrine. We agree with the County that the law of the case doctrine precludes re-litigation of these issues. The circuit court, therefore, did not err in applying the law of the case in determining impact fee encumbrances.
>
> \* \* \*
>
> We also observed in our prior opinion that the retroactivity provision of Bill No. 27-07 was not relevant to the case. In particular, we cited the definition of an "encumbrance" as set forth in § 17-11-201(2) of the County Code. At that time we observed that, "[a]though this statutory definition, enacted by Council Bill No. 27-07, was not effective until May 22, 2007, long after the events with which we are concerned here, the definition conforms to generally accepted accounting principles (GAAP)." Further, we pointed out that we had no occasion to consider the validity of the retroactivity provision of the amended ordinance because the only relevant issue was the definition of "encumbrance," and the ordinance was cited "simply to state the pre-existing, generally accepted meaning of the term, 'encumbrance[.]'"
>
> Thus, we have already defined -- as a matter of law -- the definition of "encumbrance" that governs this case. Additionally, we have previously held that the retroactivity provision of Bill 27-07 is not implicated, and does not alter how impact fee encumbrances are counted for purposes of this case.

10

*Id.* at 11-12.

Finally, we noted that the Court of Appeals had rejected the class plaintiffs' claim

that they had obtained vested rights in impact fee refunds by bringing their lawsuit in

2001:

> Moreover, the Court of Appeals has made clear that the retroactivity provision of Bill 27-07 is of no consequence here. As a threshold matter, we point out that, as the circuit court aptly observed, the key issue in a retroactivity analysis is whether Owners have "vested rights" in their claims for impact fee refunds. "If the legislature intends a law affecting substantive matters to operate retroactively and the law does not offend constitutional limitations or restrictions, it will be given the effect intended.["] *State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.*, 278 Md. 120, 123 (1976). In conducting the retroactivity analysis, a court must determine whether the retroactive application of the statute or ordinance would interfere with vested rights. *Rawlings v. Rawlings*, 362 Md. 535 (2001).
>
> Here, the Court of Appeals held that the instant case was not about vested rights, and that Owners had no vested rights in impact fee refunds:
>
>> ***This case is not about vesting***. It is about the PZO's lack of authority under the impact fee ordinance to go back and [make] administrative decisions it failed to effectively execute when permitted. Indeed, the Owners may not be vested in their right to a refund. Whether they are entitled to a refund and in what amount will be determined by the Circuit Court on remand. The full refund amount determined by the Circuit Court on remand may be reduced if the County is able to prove that it, in fact, encumbered the impact fee funds within six years.
>>
>> \*     \*     \*
>
> *Anne Arundel County v. Halle Dev., Inc.*, 408 Md. 539; *id.* at 559, n.7 (emphasis added).

*Id.* at 12-13.

> **B.**     ***Dabbs***

In the present case, involving impact fees collected in FYs 1997-2002, appellants sought refunds on the ground that the impact fees were not expended or encumbered in a timely manner under § 17-11-210(b). Appellants also argued that the amendments to the Impact Fee Ordinance in Bill No. 27-07 and Bill No. 71-08 unconstitutionally interfered with their vested rights in refunds. After hearing from the parties, the circuit court ruled that the County had applied the Impact Fee Ordinance as required by this Court's 2008 opinion and found that there are no impact fees available for refund under § 17-11-210. Further, the circuit court rejected appellants' constitutional and state law challenges to the Impact Fee Ordinance, finding that most of the challenges had already been resolved against the class plaintiffs in *Halle*.

More specifically, the circuit court found that the County prepared the six FY charts in the format approved by the *Halle* courts, properly comparing the amount of impact fees collected in each FY and district under review to the amount of impact fees expended (disbursed) and encumbered as of the end of the sixth FY following the FY of collection. Kurt Svendsen, the County's Assistant Budget Officer, who had been employed by the County since September 1, 1997, was responsible for (a) the preparation of the County's Capital Budget portion of the Annual Budget and Appropriation Ordinance, and (b) the monitoring of encumbrances and expenditures recorded in connection with appropriations for capital projects. Because Svendsen monitored expenditures and encumbrances recorded against appropriations of capital projects on an almost daily basis, he was delegated the responsibility for conducting the six FY test under § 17-1-210(b).

12

In the present case, the County prepared six FY charts for FYs 1997-2002 in the same manner as the charts prepared in *Halle* for FYs 1988-2002, but also included impact fee expenditures on temporary classrooms.[3] The charts indicated that all impact fees collected in FYs 1997-2002 were expended or encumbered within six FYs following the FY of collection and, thus, no impact fees collected in these FYs were available for refund.[4]

Lastly, the circuit court found that, in applying the six FY test, the County properly interpreted the term "impact fees encumbered" in § 17-11-210(b) to mean:

> (1) the amount of impact fees collected in a district account in a FY which have not been expended on June 30 of the sixth FY following the FY of collection, for which there is

---

[3] As previously stated, prior to the enactment of Bill No. 96-01, the County was prohibited from expending impact fees to pay for temporary classrooms. Bill No. 96-01 authorized such expenditures provided they expanded the capacity of the schools to serve new development, but it was given only prospective effect, so it applied only to expenditures on and after February 3, 2002.

[4] Notwithstanding Bill No. 96-01, appellants argued that impact fees cannot be used to fund temporary classrooms because they are excluded from "State Rated Capacity" as defined by the State for school funding purposes, and impact fees can only be used for projects that expand school capacity. Appellants also argued that the "rough proportionality" or "rational nexus" test prohibits the use of impact fees to fund temporary classrooms.

The County disagreed with appellants' arguments, contending that the use of impact fees to fund temporary classrooms on and after February 3, 2002, was expressly authorized by law and that the rational nexus test does not apply to the County's impact fees. Alternatively, the County prepared six FY charts that excluded all expenditures on temporary classrooms in calculating whether impact fees were available for refund in FYs 1997-2002. Those charts demonstrated that, even if all expenditures on relocatable classrooms were excluded, there would still be no impact fees available for refund.

13

(2) as of the same date, an encumbrance (purchase order) on an impact fee eligible capital project in the district.

According to the circuit court, this definition is the only logical one based on GAAP, the applicable provisions of the County Charter, and Annual Budget and Appropriation Ordinances. Under GAAP, an appropriation states the legal authority to spend or otherwise commit a government's resources. *See* Stephen Gauthier, *Governmental Accounting Auditing and Financial Reporting* at 305 (Government Finance Officers Ass'n 2001).[5] Meanwhile, § 715(a) of the County Charter provides that County officials and employees may not spend or commit funds in excess of appropriations, and § 17-11-201(2) defines an encumbrance as "a legal commitment for the expenditure of funds, chargeable against the applicable appropriation for the expenditure, that is documented by a contract or purchase order." Thus, the court concluded that when determining the amount of "impact fees encumbered,"[6] the County was correct in comparing the amount of unexpended impact fees in the district account at the end of the relevant FY to the encumbrances entered in relation to capital projects in the district that have been determined by the PZO to be eligible in the district.

---

[5] This scholarly treatise has been relied upon repeatedly throughout the related proceedings by this Court and by the circuit court.

[6] According to the County, in the Annual Budget and Appropriation Ordinances, the County Council appropriated only sums of money for capital projects, and did not appropriate from a specific funding source. The County states that there are numerous sources for the funds disbursed to pay invoices relating to capital projects, including impact fees, general funds, federal grants, state grants, and developer contributions. It also notes that funding sources for County capital projects are identified by the County's Office of Finance after invoices are paid from the Central Cash Fund.

Additional facts will be included as they become relevant to our discussion, below.

## Discussion

Md. Code (1973, 2013 Repl. Vol.), § 3-409(a) of the Courts & Judicial Proceedings Article provides that "a court *may* grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if . . . [a]n actual controversy exists between contending parties." (Emphasis added). "It follows that 'declaratory judgment generally is a discretionary type of relief.'" *Sprenger v. Pub. Serv. Comm'n of Maryland*, 400 Md. 1, 20 (2007) (quoting *Converge Servs. Grp. v. Curran*, 383 Md. 462, 477 (2004)). "Thus, we generally review a trial court's decision to grant or deny declaratory judgment under an abuse of discretion standard." *Id.* at 21.

The Court of Appeals has "defined abuse of discretion in numerous ways, but has always enunciated a high threshold." *Sumpter v. Sumpter*, 436 Md. 74, 85 (2013) (citations omitted). Previously, this Court has stated:

> "Abuse of discretion" is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."
>
> There is a certain commonality in all of these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion

15

standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*North v. North*, 102 Md. App. 1, 13-14 (1994) (internal citations omitted).

## I. "Rough Proportionality" or "Rational Nexus" Test

Appellants first argue that the circuit court erred in determining that the rough proportionality test, or the rational nexus test, has no application to the development impact fees in this case. Rather, according to appellants, the County must demonstrate that "its expenditure of impact fees was reasonably attributable to new development and each such expenditure reasonably benefitted 'new development' and/or individual 'against whom the fee was charged.'" (Citations omitted). In advancing their argument, appellants assert that the circuit court's decision runs contrary to *Dolan v. City of Tigard*, 512 U.S. 374 (1994), *Waters Landing, Ltd. P'ship. v. Montgomery Cty.*, 337 Md. 15 (1994), *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013), and several out-of-state cases.

In response, the County avers that, "[u]nder settled law, the rough proportionality or rational nexus test does not apply to legislatively enacted fees or taxes of general application, such as the County's impact fees" in this case.

The United States Supreme Court established the "rough proportionality" test in *Dolan*, 512 U.S. at 391. In that case, a property owner applied for a building permit to construct a commercial building, and the City of Tigard conditioned the issuance of the permit on the dedication of (1) a portion of the property for a "greenway" to control

16

flooding, and (2) another portion for a pedestrian and bicycle path. *Id.* at 379-80.

Although the Supreme Court found that an "'essential nexus' exists between the 'legitimate state interest' and the permit condition exacted by the city," pursuant to *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837 (1987), it nonetheless ruled that the City of Tigard failed to demonstrate that the required dedications were consistent with the takings clause of the Fifth Amendment because the extent of the exaction was not roughly proportional to "the impact of the proposed development." *Dolan*, 512 U.S. at 386-96.

Approximately six months following the *Dolan* decision, the Maryland Court of Appeals ruled that the rough proportionality test did not apply to a "development impact tax [imposed] by legislative enactment, not by adjudication." *Waters Landing*, 337 Md. at 40. The Court reasoned:

> We think *Dolan*, which concerned the Fifth Amendment Takings Clause, is irrelevant to the issue of special benefit assessments and generally inapplicable to this case. While the facts in *Dolan* are somewhat similar to the facts before us, the Court, in reaching its holding, specifically relied on two distinguishing characteristics that are absent in the instant case. First, the Court mentioned that instead of making "legislative determinations classifying entire areas of the city," the City of Tigard "made an adjudicative decision to condition [the landowner's] application for a building permit on an individual parcel." *Id.* at ___, 114 S. Ct. at 2316, 129 L.Ed.2d at 316. Second, the Court noted that "the conditions imposed were not simply a limitation on the use [the landowner] might make of her own parcel, but a requirement that she deed portions of the property to the city." *Id.* In contrast, Montgomery County imposed the development impact tax by legislative enactment, not by adjudication, and furthermore, the tax does not require landowners to deed portions of their property to the County.
>
> Furthermore, *Dolan* is inapplicable because it concerns the Takings Clause, which is not implicated in the case before us. To the extent that this tax is a regulation on the development of land, it is not a regulation that "'goes too

17

far'" so as to be "'recognized as a taking.'" *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, ___ 112 S. Ct. 2886, 2893, 120 L.Ed.2d 798, 812 (1992) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 160, 67 L.Ed. 322 (1922)). A regulation does not "go too far" unless it either "compel[s] the property owner to suffer a physical 'invasion' of his property," or "denies all economically beneficial or productive use of land." *Id.* at ___, 112 S. Ct. at 2893, 120 L.Ed.2d at 812-13[.]

*Id.*

Like in *Waters Landing*, the impact fees at issue here were imposed by legislative enactment, and do not require landowners to deed portions of their property to the County. Moreover, appellants cannot claim "that the impact tax" here "compel[s] the property owner to suffer a physical 'invasion' of his property," or "denies all economically beneficial or productive use of land." *Id.* at 40-41. Therefore, as the Court of Appeals concluded in *Waters Landing*, we similarly hold that "the Takings Clause being inapplicable, *Dolan* does not affect our decision." *Id.* at 41.

We disagree with appellants' assertion that *Koontz* runs contrary to this conclusion. In that case, the development exactions at issue involved discretionary exactions made on the basis of an individualized determination; it did not involve a legislatively imposed tax of general application. *See Koontz*, 133 S. Ct. at 2591. Thus, the Supreme Court ruled that the "so-called 'monetary exactions' must satisfy the nexus and rough proportionality requirements of *Nollan* and *Dolan*." *Id.* at 2599. The *Koontz* Court clarified, however, that "[i]t is beyond dispute that [t]axes and user fees . . . are not takings," and that its decision should not be read to "affect the ability of governments to

18

impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners." *Id.* at 2600-01 (internal citation omitted).

For these reasons, the circuit court did not err or abuse its discretion in declining to apply the rough proportionality or rational nexus test to the County's impact fees.[7]

## II.    Effect of Bill No. 27-07

Next, appellants argue that Bill No. 27-07 cannot be applied retroactively. In support of their argument, appellants aver that "[n]o Court of Appeal has determined [this issue]," and they further contend that "completed capital projects are not subject to retroactive legislation." In sum, appellants believe that the retroactivity of Bill 27-07 interfered with their vested rights, and that impact fee refunds are due.

In response, the County asserts that "[t]his Court and the Court of Appeals ruled in the *Halle* case that the retroactivity of Bill 27-07 did not interfere with any vested rights . . . because the bill did not effect a change in policy." We agree with the County.

As we outlined above, in *Halle*, we ruled that Bill No. 27-07 did not modify the concept of encumbrance, which had been in the County Code from the enactment of Bill 58-87 in 1988, and thus, it was unnecessary to address the retroactivity of the legislation in our 2008 opinions because it did not change law or policy. Thereafter, upon granting the *Halle* plaintiffs' petition for writ of *certiorari*, the Court of Appeals explained that the class plaintiffs did not have vested rights which would preclude the County from counting encumbrances after the close of the six FY periods. Then, in 2013, we

---

[7] Because the test does not apply to the impact fees in this case, we need not address the merits of whether the County complied with the test's requirements.

19

reiterated that the retroactivity provision of Bill No. 27-07 was not implicated in *Halle*, that it did not alter how impact fee encumbrances were counted, and that *Halle* was not about vesting.  We fail to see how we can reach a different conclusion here, especially when we have previously made clear that the holdings in our 2008 opinion and the subsequent holdings of the Court of Appeals in *Halle* are the law of the case as to this very issue.

Appellants' reliance on *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604 (2002) is misplaced.  *Dua* involved challenges to two retroactive laws, regarding refund of late fees associated with cable contracts, passed by the General Assembly during its 2000 session.  370 Md. 610-11.  There, the Court of Appeals stated that neither law could be applied retroactively, as "they represented major changes of legislative policy."  *Id.* at 643.  In addition, at the time the legislation took effect in *Dua*, the petitioners' ability to recover the refunds was not subject to any future review, act, contingency, or decision to make it secure and, therefore, the Court concluded that "there is a vested right in an accrued cause of action and that the Maryland Constitution precludes the impairment of such right."  *Id.* at 632.

By contrast, here, Bill No. 27-07 did nothing more than codify the County's procedure; it did not retroactively change County law or policy, nor did it purport to take away an accrued cause of action for refunds.  *See id.* at 643; *Cf. Prince George's Cty. v. Longtin*, 419 Md. 450, 500 (2011) (holding that retroactive application of damages cap constituted a substantive change in law and policy that occurred after the cause of action had fully accrued, and would thus violate the Maryland Declaration of Rights).

20

Accordingly, the calculation of refunds with consideration of encumbrances pursuant to the County's procedure in Bill No. 27-07 did not interfere with vested rights.

## III. $9.9 Million

Appellants argue that the County knowingly violated the Impact Fee Ordinance by denying them a refund of $9.9 million, which is the amount the County transferred from the General Fund to the Impact Fee Fund to replace fees that were improperly spent on ineligible projects. In response, the County avers that this Court had already ruled, in *Halle*, that class plaintiffs are not entitled to "dollar for dollar" refunds of impact fees spent on ineligible projects. The County is correct.

The impact fee refund at issue here stems from appellants' claim concerning the impact fees collected in FYs 1997-2002. At the time of appellants' original claim, however, those impact fees were expended or encumbered within six FYs following the FY of collection and, as such, no impact fees were available for refund. § 17-11-201.

Thereafter, the circuit court determined that the County funded certain projects with money from the Impact Fee Fund and that those projects were ineligible from impact fee use. According to the court, the County should have used the General Fund or another source instead. As a result, in FY 2008, the County credited the Impact Fee Fund for the expenditures that the circuit court had determined were improperly spent on projects ineligible for impact fee use, totaling $9.9 million.

As the County correctly states, this accounting adjustment does not violate any County or State law, and does not constitute a basis for a refund. In Maryland, a taxpayer is entitled to a refund where the refund is specifically authorized by statute. *Bowman v.*

21

*Goad*, 348 Md. 199, 202 (1997) ("any statutorily prescribed refund remedy is exclusive"). No statute authorizes a refund of money transferred from the General Fund to the Impact Fee Fund to replace funds erroneously expended. Therefore, we reject appellants' contention that they are now entitled to a $9.9 million refund.

## IV. "State Rated School Capacity"

In late 2001, the County Council enacted Bill No. 96-01, which, effective February 3, 2002, authorized the County to use impact fees for temporary classroom structures provided they expanded the capacity of the schools to serve new development. Appellants argue that this change in policy was simply "the County's attempt to prevent the refund of impact fee expenditures." In addition, they contend that Bill No. 96-01 violates the rational nexus doctrine, effects a taking, and is preempted by State regulation.

As we explained in detail above, neither the rational nexus doctrine nor the takings clause applies here. With regard to appellants' contention that impact fees cannot be expended for temporary classrooms because movable structures do not expand the capacity of schools as measured by the Maryland State Department of Education's ("MSDE") State Rated Capacity ("SRC"), we conclude that nothing in MSDE's definition of SRC was intended to preempt the County's authority.

Under Maryland law, "State law may preempt local law in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption." *Worton Creek Marina, LLC v. Claggett*, 381 Md. 499, 512 (2004) (quoting *Talbot County v. Skipper*, 329 Md. 481, 487-88 (1993)) (footnote omitted). Here, appellants assert that there is conflict preemption. Under that theory, "when a local government ordinance

22

conflicts with a public general law enacted by the General Assembly, the local ordinance is preempted by the State law and is rendered invalid." *Id.* at 513 (citations omitted).

As the circuit court ruled, there is nothing in the State definition of SRC that prohibits the County from applying a definition of capacity for purposes of determining the *scope of its use of impact fees* broader than the definition used by MSDE for *school finance purpose*s. The County's definition of capacity is consistent with the enabling law for the impact fees (1986 Md. Laws Ch. 350, § 1, codified in § 17-11-214), and it is the County, not the State, that determines the scope of its Impact Fee Ordinance. As such, appellants' challenge to Bill No. 96-01 fails.

### V.     Motion for Accounting

Next, appellants continue to challenge the retroactivity of Bill No. 27-07 and to assert their right to a refund of the $9.9 million replenishment, by arguing that the circuit court erred in denying their motion for an actual accounting by the County. Specifically, appellants assert that the County should have been ordered to provide an accounting of the impact fees "**without** the new accounting procedures in retroactive Bill 27-07 and the 2008 replenishment." (Emphasis in original). This is because, according to appellants, the County's records governing impact fee collections, expenditures, encumbrances, and eligibility are complicated, unorganized, and solely in the County's possession.

Contrary to appellants' assertion, our opinion in *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415 (2004), squarely addresses this issue. In that case, we explained that the traditional criteria for an accounting in equity were as follows:

23

> The general rule is that a suit in equity for an accounting may be maintained when the remedies at law are inadequate.
>
> &ast; &ast; &ast;
>
> The instances in which the legal remedies are held to be inadequate are said to be as follows: First, where there are mutual accounts between the plaintiff and the defendant; second, where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate remedy at law; and third, where a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account.

*Id.* at 508-09 (internal citations and emphasis omitted). With regard to the second instance, which applies to appellants' complaint here, we clarified:

> [W]hereas an equitable claim for an accounting once served a necessary discovery function, that function has been superseded by modern rules of discovery.
>
> [W]here there is no other ground of equity jurisdiction, a bill for discovery alone has been practically superseded by an adequate, complete and sufficient remedy at law.
>
> . . . [I]t is sufficient that the new rules furnish means for discovery, at law or in equity, which are broader than the former inherent equity jurisdiction.

*Id.* at 510 (internal citations and emphasis omitted).

In this case, not only was discovery a fully effective means for appellants to obtain the information they sought in their motion for an accounting, but the County also provided them with the six FY charts and documents necessary for appellants to determine whether impact fees were available for refund. As the County notes, appellants have not pointed to a single piece of information relevant to the calculation that they were not provided. The circuit court, therefore, properly denied appellant's motion.

24

## VI. Effect of Bill No. 71-08

Finally, appellants contend that Bill No. 71-08, which prospectively repealed the impact fee refund provisions previously set forth in § 17-11-210, interfered with their vested rights to impact fee refunds in violation of the contracts clause and takings clause of the United States Constitution. According to appellants, Bill No. 71-08 "operates as a substantial impairment of a contractual relationship between the County and special taxpayers" and "is facially unconstitutional for it violates the rational nexus doctrine by eliminating the County's burden to demonstrate a need for the collection of [impact] fees."

"As a general rule, statutes are presumed to operate prospectively and are to be construed accordingly." *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co. Inc.*, 308 Md. 556, 560 (1987) (citations omitted). A legislative body is authorized to "amend, qualify, or repeal any of its laws, affecting all persons and property which have not acquired rights vested under existing law." *Dal Maso v. Bd. of Cty. Comm'rs of Prince George's Cty.*, 182 Md. 200, 206 (1943). "Thus many courts adhere to the proposition that in the absence of a contrary expression of intent, a cause of action or remedy dependent upon a statute falls with the repeal of a statute." *State v. Johnson*, 285 Md. 339, 344 (1979) (citations omitted). In sum, "rights which are of purely statutory origin and have no basis at common law are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested." *Beechwood Coal Co. v. Lucas*, 215 Md. 248, 256 (1958) (citations omitted).

25

Appellants suggest that prospective application of the repeal in this case applies only to impact fees collected after Bill No. 71-08's effective date of January 1, 2009. Appellants are mistaken. As explained above, the repeal of a statute creating a right purely of statutory origin, such as § 17-11-210, wipes out the right unless the right is vested. Stated differently, the prospective repeal of the substantive right to assert a claim means that the repeal bars any claim that could not have been made (*i.e.*, not ripe) as of the effective date of the repeal. *See McComas v. Criminal Injuries Comp. Bd.*, 88 Md. App. 143, 148 (1991) ("Because the rights and obligations created [at issue] originated with the statute itself, amendments apply to all claims to which the Board has not granted an award."); *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 533 (1977) (restating the "well established" principle that "[a]bsent a contrary intent made manifest by the enacting authority, any change made by statute or court rule affecting a remedy only (and consequently not impinging on substantive rights) controls all court actions whether accrued, pending or future") (footnote and citations omitted).

In this case, § 17-11-210 originally required the County to refund fees that had not been expended or encumbered within six FYs following the FY of collection. Pursuant to § 17-11-210(b), the County was required to determine whether impact fees were available for refund within 60 days following the end of the FY. Thus, a claim for a refund of impact fees collected in FY 2003 could not be ripe until August 29, 2009. Because this date is after the effective repeal date of January 1, 2009, the circuit court

26

correctly ruled that appellants were barred from claiming fees collected after 2002 and

that they have no vested right that precludes the repeal.[8]

Finding no error or abuse of discretion on the part of the circuit court, for all of the

foregoing reasons, we affirm the circuit court's judgment.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

---

[8] Bill No. 78-01 was not given express retroactive effect, and therefore, the repeal of § 17-11-210 was prospective. *See State Farm Mut. Auto. Ins. Co. v. Hearn*, 242 Md. 575, 582 (1966) ("The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary.") (Citations omitted). Accordingly, unlike fees collected in FY 2003, claims for refunds of impact fees collected in FYs 1997-2002, which were not expended or encumbered within six FYs following the year of collection, were ripe prior to the repeal and may be pursued in this case.